UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CURTIS L. HALL                                          CIVIL ACTION

VERSUS                                                  NO. 10-1872

ST. TAMMANY PARISH ET AL.                               SECTION "C" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Curtis L. Hall, is a prisoner currently incarcerated in the St. Tammany Parish Jail in Covington, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against St. Tammany Parish, St. Tammany Parish Sheriff's Office, Sheriff Rodney Jack Strain, Jr., Gregory Longino, A. Ripple and Kelly Umbehagen.  Hall alleges that while incarcerated in the St. Tammany Parish Jail, he was involved in a fight with Robert King, another inmate with whom he was being housed. He claims that defendants failed to protect him from this harm because he was a pretrial detainee who was being housed with convicted inmates at the time of the fight.  He also claims that when he was moved to another jail unit after the fight, defendants failed properly to secure his personal belongings, which have never been returned to him.  He seeks monetary and injunctive relief.  Record Doc. No. 1 (Complaint at ¶ V).

On December 2, 2010, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Charles M. Hughes, Jr., counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

### THE RECORD

Hall testified that he is currently incarcerated in the St. Tammany Parish Jail, where he has been incarcerated for a total of about 18 months, excluding a 60-day stay in the Feliciana Forensic Facility for treatment and examination. He stated that he is a pretrial detainee awaiting trial on a charge of being a convicted felon in possession of a firearm. He confirmed that his claims in this case arise from an incident that occurred in September 2009 at the St. Tammany Parish Jail, including a fight that occurred between Hall and another inmate, the loss of personal items following the fight and his housing as a pretrial detainee together with convicted inmates.

As to the fight with another inmate, Hall testified that on September 25, 2009, he was in his cell, when another inmate "punched me through the bars." He explained that the other inmate, Robert King, was a convicted inmate. Hall said that he was in his cell, behind closed bars, when King passed by Hall's cell and hit him through the bars of the cell. Hall said King was not his cell-mate, but was being housed in the same tier area of the jail. He testified that King struck him, then the cell door was opened "because it was

2

yard call, I don't know, somebody told them to open it." He described "yard call" as a time when he and the other inmates were preparing to go outdoors for recreation.

Hall testified that King was harassing him, attempting to "strong-arm" Hall so that King could take from Hall items that Hall had purchased in the jail commissary.  Hall said that King reached through the bars of Hall's closed jail cell, and then the door was remotely opened by the guard stationed in the pod security booth. Hall testified that when the cell door opened, he and King immediately became involved in a fight that "didn't last long," perhaps a few seconds, and four guards rushed in and broke up the fight quickly, but defendant Deputy Ripple stayed at her station in the security pod.

Hall testified that Deputy Ripple was the guard who "worked in the pod," which he described as a security booth where electronic surveillance and controls to open the cell doors are located. He said Deputy Ripple was the guard who opened his cell door at about noon when the fight occurred. He said he had told guards earlier he wanted his door closed that day, and they had done so.

Hall testified that King hit him about six times during the several seconds the fight lasted. He described the injuries he suffered in the fight as "mouth bleeding, . . . head injury, like knots on my head." He confirmed the reference in his medical records, Record Doc. Nos. 6 and 26, that he was brought to the jail medical unit after the fight and

that the cut inside his lip was cleaned.  Hall stated that the cut in his mouth healed within about two weeks.

Plaintiff stated that he blames all four defendants for the fight. He complained that defendants did nothing in response to his complaints and grievances about the fight and the loss of his personal items after the fight. "They just ignored me," he said. He testified that he had not had any problems with King before the fight and he did not expect that King was going to hit him or attack him on the day of the incident. He alleged that King was "a jailhouse bully" and that defendants were aware of that.

As to his claim that his personal items were lost and never replaced, he testified that after the fight he was moved to another section of the jail, away from that tier completely, but none of the personal belongings he had in his original cell were ever forwarded with or returned to him, despite his requests for his property. Hall confirmed the listing in his written submissions that the lost items included legal papers, letters, family pictures, documents, tee-shirts, boxers, socks and various commissary purchases. He said that the commissary items alone were worth more than $70, and he has never received any compensation for or replacement of his lost property.

As to his final claim, Hall complained that he was housed with convicted DOC (Department of Corrections) inmates who were "aggravated" to be around pretrial detainees. He said his cell-mate, Robert White, was a DOC inmate, but he had no fights

4

with him. He testified that his fight with King was the only fight he had at the jail, and that he has been housed with DOC inmates throughout his stay in the St. Tammany Parish Jail. He said that about 30 inmates were housed on the tiers where he has been kept, but he could not say how many were convicted inmates and how many were pretrial detainees.  He alleged that some of the convicted inmates have already been given life prison sentences. He said he continues to be housed on the same tier as convicted inmates, but no other fights or incidents have occurred.

As to the four defendants, he complained that Warden Longino and Sheriff Strain have never responded to his complaints or discussed them with him, but otherwise were not personally involved in either the fight or the loss of his property. He stated that defendant Ripple is the security pod deputy who electronically opened the door to his cell after King struck him, resulting in their fight.  He testified the defendant Umbehagen was responsible for failing to get his personal belongings from his cell after the fight and return them to him when he was moved. He stated that the door to his cell was opened "instantly" after King struck him through the bars. He did not know why the cell door was opened. "I never told them to open it," he said.

5

## ANALYSIS

### I.     STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir.

1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the

actual nature of the complaint, it may also appear that no justiciable basis for a federal

claim exists."  <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing,

<u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d

318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504

U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as

long as they are properly identified, authentic and reliable.  "The Court should allow

proper cross-examination and should require that the parties properly identify and

authenticate documents."  <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909

F.2d 121, 124 (5th Cir. 1990)).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it

lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995);

<u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the

irrational or wholly incredible."  <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably

meritless legal theory, such as if the complaint alleges the violation of a legal interest

which clearly does not exist.'"  <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>,

105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim of violation of his constitutional rights cognizable under Section 1983, even under the broadest reading.[1]

## II.    FAILURE TO PROTECT FROM HARM

While the fight with another inmate described by Hall is unfortunate, the question for this court is whether a violation of federal constitutional rights has been stated. Accepting as true for present purposes all of Hall's written submissions and testimony,

---

[1]Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

8

I must conclude that no violation of Hall's constitutional rights by the defendants occurred in these circumstances.

As previously noted, Hall was a pretrial detainee at the time of the incident on which he bases this claim.  In Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), however, the Fifth Circuit held "that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including . . . protection from harm, during their confinement."  Id. at 650. Thus, regardless whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate, such as those alleged by Hall in this case.  Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare, 74 F.3d at 650.  Here, although plaintiff alleges that he was exposed to harm by prison officials' acts or omissions, he fails to state a claim cognizable under Section 1983.

Under the Eighth Amendment, prison officials have a duty to protect inmates from violence by other inmates and to take reasonable measures to protect their safety.  Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hare, 74 F.3d at 650.  The Eighth Amendment standard enunciated in Farmer applies to a prisoner's claim that prison officials failed to protect him from harm inflicted by other inmates.  Thus, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to

9

a substantial risk of serious harm.  Farmer, 511 U.S. at 834; Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998).

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitute conduct proscribed by the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976).  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 847.  An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Id. at 834 (quotation omitted).

Further, plaintiff must establish that the defendant possessed a culpable state of mind.  Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837; accord Newton, 133 F.3d at 308.  "Mere negligence or a failure to act reasonably is not enough.  The officer must have the subjective intent to cause

harm."  Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).  If the court finds

that one of the components of the test is not met, it need not address the other component.

 Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference"
> is a stringent standard as to fault, requiring proof that a municipal actor
> disregarded a known or obvious consequence of his action. . . .  The
> "deliberate indifference" standard permits courts to separate omissions that
> "amount to an intentional choice" from those that are merely
> "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citing Board

of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (additional citations and

footnote omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal

law, is the appropriate test for deliberate indifference."  Norton, 122 F.3d at 291.

In this case, it cannot be concluded that prison officials unconstitutionally exposed

plaintiff to a substantial and known risk of serious harm because his own testimony

confirms that neither prison officials nor Hall himself had any reason to believe or even

suspect that the inmate who allegedly attacked him posed danger to Hall under these

particular circumstances.  There was no history known to defendants of prior incidents

between Hall and King.  Hall testified that there had been no prior history of

disagreement or other incidents between him and King.  The incident occurred suddenly

and without warning, beginning with a punch by King through closed cell doors.  As Hall

testified, prison officials had no reason to suspect that the inmate who attacked him posed any known or anticipated threat to him before the assault, just as he himself had no reason to believe that Robert King posed any threat to him.  There is no indication that the cell door was opened intentionally to cause harm, rather than on schedule for outdoor recreation, as Hall testified.

Hall's testimony in this regard, even accepted as true in its entirety, does not rise to the level of deliberate indifference to a known risk of substantial harm required to establish a constitutional violation.  Under these circumstances, plaintiff at best asserts a state tort law negligence claim, not a claim of civil rights violations cognizable under Section 1983.  However, claims arising from allegedly negligent acts do not give rise to relief under Section 1983.

The Supreme Court has held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property."  Daniels v. Williams, 474 U.S. 327, 328 (1986); Davidson v. Cannon, 474 U.S. 344, 347 (1986).  In a number of contexts, other courts have determined that allegations amounting to negligence cannot support a Section 1983 claim.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993) (negligent medical care); Hare v. City of Corinth, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (negligence insufficient to support failure to protect claim under Section 1983); Eason v. Thaler, 73 F.3d 1322, 1328-29 (5th

Cir. 1996) (negligence cannot support Section 1983 action for deprivation of religious rights or for an Eighth Amendment claim based upon prison officials' alleged gross negligence in permitting a gas leak to occur); Doe v. Taylor Indep. Sch. Dist., 975 F.2d 137, 142 (5th Cir. 1992), vacated on other grounds, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.").

It cannot be concluded that any act or omission of prison officials knowingly exposed Hall to a substantial risk of serious harm or that they were deliberately indifferent, the strict standard required by the law for constitutional purposes.  In the absence of deliberate indifference as discussed above, prison officials cannot be liable under Section 1983 for minor injuries allegedly resulting because a guard electronically opened a cell door. There is no conceivable claim that prison officials violated his constitutional rights by failing to protect him from harm, and this claim must be dismissed.

III.   LOSS/DEPRIVATION OF PROPERTY

Hall alleges that his personal property, consisting of legal papers, letters, family pictures, documents, tee-shirts, boxers, socks and various commissary purchases, was lost, misplaced or not preserved by jail officials and returned to him after he was moved

to another cell following his fight with the other inmate. Construed broadly, these allegations may constitute a complaint that Hall was deprived of his property in violation of his due process rights.  However, plaintiff fails to state a cognizable Section 1983 claim in this regard, and his claim must be dismissed.

In deciding whether state action has violated an individual's right to due process, the court must address two questions: "whether the state action has deprived the individual of a protected interest–life, liberty or property," and if so, "whether the state procedures available for challenging the deprivation satisfy the requirements of due process."  Augustine v. Doe, 740 F.2d 322, 327 (5th Cir. 1984); accord Neuwirth v. Louisiana State Bd. of Dentistry, 845 F.2d 553, 556 (5th Cir. 1988); Cuellar v. Tex. Employment Comm'n, 825 F.2d 930, 934 (5th Cir. 1987).

The United States Supreme Court has consistently ruled that a prisoner's property and due process rights are circumscribed by his custodial status.  In general, the Supreme Court has ruled that a state actor's random and unauthorized deprivation of a prisoner's property, whether negligent or intentional, does not result in a violation of due process rights if the State provides an adequate post-deprivation remedy.  Alexander v. Ieyoub, 62 F.3d 709, 712 (5th Cir. 1995) (citing Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part on other grounds by Daniels v.

Williams, 474 U.S. 327 (1986)); accord Wilson v. Holt, 158 F. App'x 546, 546 (5th Cir. 2005).

More specifically, in Parratt, a state prisoner, like Hall, sued prison officials under Section 1983 alleging that their negligent loss of a hobby kit he had ordered from a mail order catalog deprived him of property without due process of law.  The United States Court of Appeals for the Eighth Circuit affirmed the district court's summary judgment in the prisoner's favor, but the Supreme Court reversed, finding that no due process violation occurs when a state employee negligently deprives a prisoner of property, provided that the State makes available a meaningful post-deprivation remedy.  Parratt, 451 U.S. at 543-44, cited in Hudson, 468 U.S. at 532.

In Hudson, a state prisoner filed suit under Section 1983, alleging that the correctional officer defendants had "conducted a 'shakedown' search of [the prisoner's] locker and cell for contraband," and had "intentionally destroyed certain of his noncontraband personal property during the . . . search."  Hudson, 468 U.S. at 519-20. The Court specifically approved the conduct by prison officials of "wholly random searches" or "routine shakedowns of prison cells" as "essential" to the effective security and administration of prisons.  Id. at 529.  Finding that the State had provided an adequate post-deprivation remedy for the alleged destruction of plaintiff's property, the Court found no violation of his rights actionable under Section 1983.  "We hold that the

15

Fourth Amendment has no applicability to a prison cell.  We hold also that, even if [the officers] intentionally destroyed [the prisoner's] property during the challenged shakedown search, the destruction did not violate that Fourteenth Amendment since the [State] has provided [the prisoner] an adequate post-deprivation remedy."  Id. at 536.

The Fifth Circuit has clearly recognized that Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property.  Hutchinson v. Prudhomme, 79 F. App'x 54, 55 (5th Cir. 2003); Copsey v. Swearingen, 36 F.3d 1336, 1342-43 (5th Cir. 1994); Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984).

Thus, the deprivation or loss of property alleged by Hall in this case, whether negligent or intentional, is precisely the kind of prisoner's claim as to which the Fifth Circuit has consistently affirmed dismissals by applying the Parratt/Hudson doctrine. See, e.g., Hutchinson, 79 F. App'x at 54 (affirming dismissal of prisoner's claim "that prison personnel mishandled and embezzled funds deposited in his inmate account" because Louisiana law provides an adequate post-deprivation remedy); Marshall, 741 F.2d at 764 (Louisiana law provided adequate post-deprivation remedy when inmate's "personal property was scattered about and some items were missing" from his cell); see also Odom v. St. Tammany Parish S.O., No. 09-0109, 2009 WL 1147925, at *3 (E.D. La. Apr. 28, 2009) (McNamara, J.) (state law provided adequate remedy for allegations that deputies took inmate's mail, pictures, addresses for witnesses for his criminal case and

16

copies of motions).  Such dismissals are mandated, even when the plaintiff has alleged that the property deprivation violates some prison regulation or policy.  See Myers v. Klevenhagen, 97 F.3d 91, 95 (5th Cir. 1996) (no due process violation when prison officials debited inmate's prison account to pay for medical services provided in prison, even when the action violated the prison's own policies, procedures or regulations); Murphy v. Collins, 26 F.3d 541 (5th Cir. 1994) (Inmate's Section 1983 claim that his dictionary (later destroyed as contraband), cup and bowl were confiscated without regard to prison policy was properly dismissed when adequate state post-deprivation remedies were available.); Stewart v. Herrington, No. 5:06cv177-MTP, 2008 WL 3822597, at *3-4 (S.D. Miss. Aug. 12, 2008), adhered to on reconsideration, 2008 WL 3884394 (S.D. Miss. Aug. 14, 2008) (Inmate's allegation that prison nurse charged him twice, although he saw the doctor only once, resulting in an overcharge, was dismissed because state law provided an adequate post-deprivation remedy.).

Plaintiff's state law remedy for the alleged negligent or intentional loss or deprivation of his property lies in a conversion or other tort suit for damages in state court.  Because no constitutional violation has been alleged, his complaint in this court fails to state a claim for which relief may be granted pursuant to Section 1983 and/or is legally frivolous and must be dismissed.  Hall remains free to pursue his claim

concerning his property in state court against the state officials who allegedly mishandled his property.

IV.   <u>CLASSIFICATION</u>

Hall alleges that, as a pretrial detainee, he was improperly housed with convicted inmates and that he became involved in a fight with a convicted inmate.  In <u>Jones v. Diamond</u>, 636 F.2d 1364 (5th Cir. 1981),[2] the en banc Fifth Circuit stated that

> [t]he confinement of pretrial detainees indiscriminately with convicted persons is unconstitutional unless such a practice is "reasonably related to the institution's interest in maintaining jail security," or physical facilities do not permit their separation.  Of course, if a particular pretrial detainee has a long record of prior convictions or is likely to be violent, imposition of greater security measures is warranted . . . .  Nonetheless, pretrial detainees have a due process right to be considered individually to the extent security and space requirements permit.

<u>Id.</u> at 1374 (quoting <u>Bell v. Wolfish</u>, 441 U.S. 520, 531 (1979)) (additional citations omitted).  Thus, the Fifth Circuit in <u>Jones</u> recognized that the housing of pretrial detainees with <u>convicted</u> inmates may raise concerns about the due process rights of the <u>pretrial detainees</u>, but only if the pretrial detainees' classification together with convicted inmates is handled indiscriminately without justification.  <u>Pembroke v. Wood County</u>, 981 F.2d 225, 229 (5th Cir. 1993); <u>Lathers v. Nelson Coleman Corr. Ctr.</u>, 2010 WL

---

[2]<u>Overruled on other grounds by</u> <u>Int'l Woodworkers v. Champion Int'l Corp.</u>, 790 F.2d 1174 (5th Cir. 1986), <u>aff'd sub. nom. Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437 (1987).

1489903, at *7-8 (E.D. La. Mar. 22, 2010).  However, the court also recognized that the housing of pretrial detainees with convicted inmates is permissible under some circumstances.

Significantly, the classification of inmates is an administrative function of the prison.  Jones, 636 F.2d at 1376.  Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation.  Bell, 441 U.S. at 547-48; Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990).  "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates."  Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Woods v. Edwards, 51 F.3d 577, 582 (5th Cir. 1995) (citing Hewitt v. Helms, 459 U.S. 460, 469-70 (1983)); Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt, 459 U.S. at 472).  "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law."  Woods, 51 F.3d at 581-82 (quotation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification.  The classification of prisoners is a matter within the discretion of prison officials.  Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials."  Whitley v. Hunt, 158 F.3d 882,

889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001); accord Jones v. Roach, 196 F. App'x 287, 288 (5th Cir. 2006); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003).

The Fifth Circuit's decision in Jones v. Diamond provides that pretrial detainees have a right to be considered individually only to the extent that security and space requirements permit and that imposition of greater security measures is warranted if an inmate has a long record of prior convictions or is likely to be violent.  Jones, 636 F.2d. at 1374.  Considering the individualized circumstances of Hall's case, it cannot be concluded that housing Hall with convicted inmates, including particularly the one with whom he fought, was unconstitutional.

Hall testified that his fight with DOC inmate King occurred suddenly, and there had been no prior incidents between Hall and King or any other DOC inmate.  Although he testified generally that King was a bully, Hall experienced no other incidents between him and King or any other DOC inmate, and he was aware of no other fights between convicted inmates and pretrial detainees.   In the absence of any incident other than the single, sudden and isolated fight between Hall and King, plaintiff's subjective belief that he should have been moved to another area is unsupported and insufficient for the court to conclude that prison officials' discretionary decisions concerning housing convicted inmates with these pretrial detainees were unconstitutional. Hall's own testimony

20

establishes that King posed  no known or anticipated threat to Hall before their sudden and unanticipated fight.  This circumstance does not establish the objective unreasonableness of this particular housing decision.

In this instance, housing Hall together with convicted inmates cannot be characterized as arbitrary or indiscriminate or as an abuse of the discretion the law assigns to prison officials, with which this court should not interfere.  No violation of Hall's constitutional rights occurred under these circumstances.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

    New Orleans, Louisiana, this    21st    day of December, 2010.

               JOSEPH C. WILKINSON, JR.
           UNITED STATES MAGISTRATE JUDGE

---

  [3]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.